NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW EARTHSHELL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LYCOS INTERNET LIMITED, *et al.*,<br><br>Defendants. | Civil Action No.: 14-cv-7665<br><br><br><br>OPINION |

**CECCHI, District Judge.**

### I.  INTRODUCTION

This matter comes before the Court on the Motion by Plaintiff New Earthshell Corporation ("Plaintiff") for a preliminary injunction. ECF No. 9. Defendants Lycos Internet Limited (formerly known as Ybrant Digital Limited) ("Lycos") and Online Media Solutions Limited ("Online," and collectively, "Defendants") have opposed the motion. ECF No. 11. The Court held a hearing on the motion on January 6, 2015. For the reasons set forth below, the Court denies Plaintiff's application for a preliminary injunction.

### II.  BACKGROUND

This action arises out of a transaction between Plaintiff, a Delaware corporation with its principal place of business in New Jersey, and JoBookit Holdings Limited ("JoBookit"), an Israeli company that is not a party to this action. On April 1, 2014, Plaintiff sold Viumbe LLC ("Viumbe"), a digital media company owning several websites, to JoBookit for $2.5 million, with $1 million paid to Plaintiff at closing. Compl. ¶¶ 8-9. Plaintiff extended a $1.5 million loan

1

to JoBookit to finance the balance of the purchase price. Id. Pursuant to a Loan and Security Agreement (the "LSA"), Plaintiff's loan to JoBookit was secured by a security interest in the "Collateral," which included "[a]ll of the present and future property and assets of [Viumbe], whether now owned or hereafter arising or acquired . . . ." Pl.'s Br. 1, ECF No. 9; Smith Decl. Ex. B, ECF No. 11-6. Plaintiff contends it perfected its security interest in the Collateral "by filing a UCC-1 financing statement in Delaware, Viumbe's state of organization." Compl. ¶ 10.

Plaintiff alleges that, "[b]eginning in at least March 2014, unbeknownst to Plaintiff, JoBookit and Defendants were actively scheming to divert Plaintiff's Collateral for Defendants' benefit." Compl. ¶ 16. Specifically, Plaintiff alleges that Defendants and JoBookit schemed to divert "most of Viumbe's revenues—the core of Plaintiff's Collateral," to Defendants by entering into a "Supervening Transaction," pursuant to which Defendants made a $1 million investment in JoBookit and, in exchange, Viumbe "assigned, transferred, and/or diverted 70% of its revenues to Defendants," who took control of Viumbe's "revenue, accounts receivable and the proceeds thereof." Compl. ¶ 22.

Defendants contend that what Plaintiff refers to as the "Supervening Transaction" actually consisted of two transactions: (1) Defendant Online made an equity investment in JoBookit pursuant to a Share Purchase Agreement; and (2) Defendant Online agreed to provide advertising brokerage services for websites that JoBookit acquired with its purchase of Viumbe, in exchange for a percentage of advertising revenues relating to the websites, pursuant to an Advertising Representation Agreement. Defs.' Br. 5-6. Like JoBookit, Defendant Online is an Israeli company. Compl. ¶ 4. According to Defendants, Defendant Lycos, an Indian company, is Defendant Online's parent company and was not a party to either of the Share Purchase Agreement or the Advertising Representation Agreement with JoBookit. Defs.' Br. 5 n.3.

2

In May 2014, Plaintiff filed an action in the Southern District of New York against JoBookit, JoBookit's CEO and Viumbe, asserting numerous causes of action, including fraud and breach of contract, related to the transactions and allegations above. See Notice of Removal, Ex. B, ECF No. 1-7. Plaintiff brought that action in New York because in the loan and security agreements at issue between Plaintiff and JoBookit, the parties consented to have any disputes arising in connection with those agreements adjudicated in New York City courts. Id.; Pl.'s Br. 3 n.1.

Separately, Plaintiff filed the instant action against Defendants in New Jersey Superior Court and moved for a temporary restraining order ("TRO"), enjoining and restraining Defendants from commingling or transferring any portion of the Collateral in which Plaintiff claims a security interest—including Viumbe's "revenues, accounts receivable and the proceeds thereof." Notice of Removal, Ex. B.[1] On November 17, 2014, Judge Kenneth J. Grispin of the New Jersey Superior Court granted the TRO. Id. On December 9, 2014, Defendants removed the action to this Court, and on the following day Defendants filed their opposition to the motion for a preliminary injunction that was filed by Plaintiff in state court. ECF Nos. 1 and 4. In their opposition, Defendants argued, *inter alia*, that this Court lacks personal jurisdiction over them.

On December 22, 2014, this Court issued an order extending the TRO to January 13, 2015, setting a briefing schedule for Plaintiff's motion for a preliminary injunction in this Court, and scheduling a hearing on that motion. ECF No. 10. Consistent with Judge Grispin's TRO

---

[1] Plaintiff's Complaint asserts nine purported causes of action in connection with Defendants' interference with their security interest in the Collateral: (1) Collection and Enforcement by a Secured Party under U.C.C. 9-607; (2) U.C.C. 9-609: Secured Party's Right to Take Possession After Default; (3) Impairment of Collateral; (4) Tortious Interference with Contract; (5) Conversion; (6) Unjust Enrichment; (7) Constructive Trust; (8) Declaratory Judgment; and (9) Accounting.

and in light of the personal jurisdiction issue raised by Defendants, this Court instructed both parties to include in their briefing whether this Court has jurisdiction over Defendants. On December 22, 2014, Plaintiff filed its motion for a preliminary injunction. On December 29, 2014, Defendants opposed the motion, arguing that Plaintiff does not satisfy the standard for a preliminary injunction and that this Court does not have personal jurisdiction over Defendants. In addition to the instant motion, currently pending before the Court is Defendants' motion to dismiss this action for lack of personal jurisdiction and for failure to state a claim. ECF No. 12.

### III. LEGAL STANDARD

A party seeking the extraordinary remedy of a preliminary injunction bears the burden of establishing that the following four factors weigh in favor of granting the injunction: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in his favor, and [4] that an injunction is in the public interest." Ferring Pharms., Inc. v. Watson Pharms., Inc., 765 F.3d 205 (3d Cir. 2014) (internal citations and quotations omitted).

The question of personal jurisdiction is a threshold issue that the Court should address before considering the merits of Plaintiff's preliminary injunction application. See Small v. Camden County, 728 F.3d 265, 269-70 (3d Cir. 2013); In re Diet Drugs Prods. Liab. Litig., 282 F.3d 220, 229-30 (3d Cir. 2002) (internal citations and quotations omitted) ("[P]reliminary matters such as . . . personal jurisdiction . . . should be raised and disposed of before the court considers the merits or quasi-merits of a controversy.").

Once the issue whether a court lacks personal jurisdiction over a defendant is raised, "the plaintiff bears the burden of showing that personal jurisdiction exists." Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir.

4

2001)). "[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Id. (citing Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987); Fed. R. Civ. P. 4(k)(1)(A)). In New Jersey, the long-arm statute permits jurisdiction over non-resident defendants "to the full extent permitted by the United States Constitution." Am. Fin. Resources, Inc. v. Money Source, Inc., No. 14-1651, 2014 WL 1705617, at *5 (D.N.J. Apr. 29, 2014) (citing Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 145 (3d Cir. 1992)).

There are two general types of personal jurisdiction that reflect the requirements of the Due Process Clause of the Fourteenth Amendment—general jurisdiction and specific jurisdiction. Marten, 499 F.3d at 296. While "general jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state[, s]pecific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984)). In certain circumstances, personal jurisdiction may exist based on the effects of a non-resident defendant's conduct in the forum state. Id. at 297 (citing Calder v. Jones, 465 U.S. 783 (1984)). The Third Circuit has interpreted Calder to allow the plaintiff to demonstrate personal jurisdiction by satisfying the following three elements, known as the "effects test":

(1) The defendant committed an intentional tort;
(2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
(3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Id. (citing IMO Indus. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998)).

Under the effects test, a defendant may not be "haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not

5

expressly aim his conduct at that state." Id. Thus, to demonstrate personal jurisdiction under the effects test, the plaintiff must show that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." Id. at 297-98 (internal quotations and citations omitted). With regard to business torts, the Third Circuit has held that "jurisdiction under Calder requires more than a finding that the harm caused by the defendant's intentional tort is primarily felt within the forum;" rather, the "'effects test' can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." IMO Indus., 155 F.3d at 265. It is not enough to "simply assert[] that the defendant knew that the plaintiff's principal place of business was located in the forum." Id. The typical case thus requires "some type of 'entry' into the forum state by the defendant." Id.

## IV. DISCUSSION

Taking all of Plaintiff's factual allegations as true, this Court is not satisfied that personal jurisdiction exists over Defendants in this case, and therefore it would be inappropriate to grant Plaintiff's motion for a preliminary injunction.

Plaintiff argues that personal jurisdiction over Defendants exists under the "effects test" because "Defendants engaged in 'intentional, and allegedly tortious actions [which] were expressly aimed at' New Jersey," and because Defendants "knew [these actions] would have a potentially devastating impact upon [Plaintiff]," which has its principal place of business in New Jersey. Pl.'s Br. 6. Plaintiff also argues that "Defendants reached into New Jersey and purposefully took a substantial portion of Plaintiff's Collateral, thereby availing themselves of the privilege of conducting business in the State and subjecting themselves to New Jersey law."

6

Id. at 7. Plaintiff has not alleged, however, that Defendants knew that Plaintiff's principal place of business was in New Jersey.[2] Nor has Plaintiff alleged that Defendants made any contact, with Plaintiff or otherwise, in New Jersey. Plaintiff's allegations arise from a security interest allegedly acquired under its agreements with JoBookit, which are subject to the jurisdiction of New York courts. Plaintiff's UCC-1 financing statement, by which it allegedly perfected its security interest in the Collateral, was filed in Delaware. Viumbe, the company whose revenues Plaintiff seeks to sequester to protect its security interest, is a Delaware corporation with a principal place of business in California. Notice of Removal, Ex. B, ECF No. 1-7.

The allegation that Defendants improperly took possession of Plaintiff's Collateral arises out of transactions between Defendants, an Israeli company and an Indian company,[3] and JoBookit, an Israeli company. Plaintiff has not contested Defendants' assertions that (1) these transactions did not involve Plaintiff directly and (2) the transactions were negotiated and

---

[2] At the preliminary injunction hearing, Plaintiff argued that Plaintiff's New Jersey address on the UCC-1 form should have put Defendants on notice that they could be sued in New Jersey by Plaintiff seeking to foreclose on their Collateral. Hr'g Tr. 18, Jan. 6, 2015. Plaintiff never alleged, however, that Defendants had actual knowledge that Plaintiff was principally based in New Jersey. Indeed, Plaintiff stated the following at the preliminary injunction hearing in response to the question from the Court whether, aside from New Earthshell's address on the UCC filing form, there was any contact between Defendants and New Jersey:

> The connection with New Jersey is solely with the principal's place of business, New Earthshell. And that the fact that New Earthshell is the senior secured creditor. And that New Earthshell has foreclosed on the assets that are not being delivered to New Jersey. And that the effect of being deprived of their assets, their collateral for the loan, are being felt in New Jersey by the New Jersey corporation, New Jersey based lender.

Id. at 19.

[3] As noted above, Defendants assert that Defendant Lycos is merely the parent company of Defendant Online, and was not a party to the transactions at issue.

7

executed in Israel, are governed by Israeli law and are subject to the jurisdiction of Israeli courts. Defendants further attest, and Plaintiff has not contested, that Defendant Online "had no interaction or communications with Plaintiff . . . in connection with the negotiation and execution of the Share Purchase Agreement or Advertising Representation Agreement" with JoBookit. Nizri Decl. ¶ 24. Although Plaintiff asserts in its briefing that Defendants "schem[ed]" with JoBookit to "fraudulently obtain Collateral from a New Jersey resident," Pl.'s Reply 14, Plaintiff does not allege any specific interaction between Defendants and Plaintiff that could plausibly constitute intentional targeting of New Jersey. Finally, Plaintiff has not contested, in its briefing or during the preliminary injunction hearing, Defendants' sworn statements that neither Defendant has ever had offices, employees or property in New Jersey and that neither Defendant has ever been registered to conduct business in New Jersey. See Nizri Decl. ¶¶ 5-8, 13-16.

In short, Plaintiff has only alleged that the harmful effects of Defendants' conduct were felt in New Jersey by virtue of the fact that Plaintiff's principal place of business is in New Jersey. Thus, this case is similar to that in IMO Industries, 155 F.3d at 266-67, where the Third Circuit held that this Court lacked personal jurisdiction over a German corporation that was sued by a company with its principal place of business in New Jersey. There, despite a series of letters and phone calls between plaintiff and defendant surrounding defendant's alleged tortious interference with plaintiff's attempt to sell its subsidiary, because the actions giving rise to the dispute occurred outside of New Jersey the court held that the plaintiff had failed to show that the defendant intentionally targeted New Jersey. Id. Similarly, the Court is not satisfied that it has personal jurisdiction over Defendants in this case, and thus it cannot issue a preliminary injunction.

8

Plaintiff argues that this case is distinguishable from IMO Industries because Plaintiff asserts a security interest in the Collateral, but Plaintiff does not explain why this constitutes a meaningful distinction. Hr'g. Tr. 22-23. Indeed, the Third Circuit explained in IMO Industries that Calder and its progeny had "cast doubt on the assertion that a company will feel the 'brunt' of a tort injury at its principal place of business when that injury is based on damage to contracts or property not centered in the forum." 155 F.3d at 263. As discussed above, none of the transactions here at issue, nor the Collateral, are centered in or located in New Jersey. Further, Plaintiff's claim to a security interest does not automatically render personal jurisdiction proper in Plaintiff's home state. See Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 209 (3d Cir. 1984) (holding that minimum contacts sufficient for personal jurisdiction were not present where non-resident bank, sued in proceeding to foreclose on collateral by resident plaintiff, "did no more than borrow from and repay loan to forum bank by wire transfer").

Plaintiff, in its reply papers, requests the opportunity to conduct jurisdictional discovery. A plaintiff should be allowed to conduct jurisdictional discovery "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003); see also Molnlycke Health Care AB v. Dumex Med. Surgical Products Ltd., 64 F. Supp. 2d 448, 454 (E.D. Pa. 1999) ("[A]llowing [jurisdictional] discovery is premised on the assumption that further discovery would be worthwhile."). Plaintiff conceded during the preliminary injunction hearing that it would not expect jurisdictional discovery to yield any evidence of contacts between Defendant and the forum beyond what is currently before the Court. See Hr'g Tr. at 54-58 ("And I agree, I don't think you are going to find anything from Lycos or Ybrant or any of the defendant's subsidiaries that are between my client and them. I

9

agree that would not be there. . . . But that's where we have the difference of opinion on how to look at what jurisdiction controls. Ours is focused solely on the collateral, the location of the collateral, and the effect of being deprived of the collateral."). Currently pending before the Court is Defendants' motion to dismiss this action for lack of personal jurisdiction and for failure to state a claim. ECF No. 12. Plaintiff's and Defendants' arguments regarding jurisdictional discovery are more properly addressed in ruling upon a motion to dismiss; thus, the Court will consider those arguments in ruling upon that motion. Based upon the facts and allegations before the Court at this time, however, the Court is not satisfied that it has personal jurisdiction over Defendants, and thus the Court must deny Plaintiff's request for a preliminary injunction.

## V.  CONCLUSION

Based on the foregoing, Plaintiff's motion for a preliminary injunction is denied. An appropriate order accompanies this Opinion.

DATED: January 12, 2015

_____
CLAIRE C. CECCHI, U.S.D.J.